## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **RONALD P. YOUNG** | ) | |
| And **RAMONA YOUNG** | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. |
| | ) | 1-13-CV-00585-GBL-JFA |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CHS MIDDLE EAST, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CHS MIDDLE EAST, LLC'S MOTION TO DISMISS
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, CHS Middle East, LLC ("CHSME"), hereby moves to dismiss the First Amended Complaint brought by Plaintiffs Ronald P. Young and Ramona Young (collectively, "the Youngs" or "Plaintiffs"). In Support, CHSME states as follows.

## I.    INTRODUCTION

Having had their state law retaliation claims dismissed in Virginia state court, Plaintiffs amended their complaint to assert retaliation under the federal False Claims Act, 31 U.S.C. § 3730(h) (the "FCA"). This claim must be dismissed because Plaintiffs' conduct was not "in furtherance of" protected FCA activity, nor was there any threat of an FCA lawsuit.

Even after retaining counsel, Plaintiffs never belied that their activity related to false claims being presented to the federal government.  Indeed, on September 14, 2012, Plaintiffs filed suit in Virginia state court against CHS, asserting state law retaliation claims under Florida and Virginia law.  The case was removed to this Court on the basis of diversity of jurisdiction but was ultimately remanded to Virginia state court.  *See* Docket No. 1:12-cv-01202-GBL-JFA (E.D. Va.).  On March 22, 2013, after extensive briefing and oral argument, the Virginia state court dismissed Plaintiffs' state law retaliation claims.

Rather than trying to fix their flawed state law claims, Plaintiffs conjured up a federal FCA claim and the case was again removed to this Court since a federal question is now presented.  But the retaliation provisions of the FCA require that there be retaliation for protected activity – *i.e.*, protesting false claims being submitted to the federal government.  Here, the nurse Plaintiffs simply disagree with the medical choices made by senior nurses and physicians regarding the provision of medical care.  Even assuming that Plaintiffs are correct (and that the doctors, senior nurses, and the Department of State which administers the agreement are wrong), Plaintiffs were not engaging in activity protected by the FCA.  This is why they did not assert this theory until now, and it is why the FCA claim must be dismissed.

## II.    STANDARD OF REVIEW

2

The legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). *Francis v. Giacomelli*, 588 F.3d 186, 194 (4th Cir. 2009). The aggregation of these specific requirements reveals that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact. *Id.*

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, *i.e.,* the "plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2006)).

The Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. To discount such unadorned conclusory

allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1950. This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Francis*, 588 F.3d at 194 But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,' " as required by Rule 8. *Id.* (quoting *Iqbal,* 129 S. Ct. at 1950). The Court noted that even though Rule 8 "marks a notable and generous departure from the hyper-technical, code pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

## III.   THE FIRST AMENDED COMPLAINT

Plaintiffs are nurses, and CHSME operates medical facilities in, among other places, Iraq.  (First Amended Complaint ("FAC"), ¶¶ 11-15).  CHSME "had a

$61.5 million contract with the U.S. State Department to provide medical services at medical facilities in Iraq." *Id.*, ¶ 13.  Plaintiffs began their employment at the medical facility at issue in September and October 2011, and they separated from CHSME in January 2012. *Id.*, ¶¶ 18, 22, 73

In their First Amended Complaint, filed April 12, 2013, Plaintiffs for the first time claim that they "witnessed and reported conditions that they reasonably believed prevented the Defendant from meeting its obligations to the government and that Defendant was therefore presenting false claims for its contracted services." *Id.*, ¶ 1.  These allegations are simply that CHSME failed to properly meet its obligations to the government – a breach of contract claim.  As we show below, breach of contract claims are not "false claims."

Plaintiffs allege that CHSME was bound by the following performance standard in its contract with the Department of State:  "Ensure that the HCPs are properly trained and certified prior to arrival in theater and that they stay proficient while providing health care." *Id.*, ¶ 14.  Plaintiffs do not cite any other standard or billing criteria from the contract.

Prior to their separation from CHSME, Plaintiffs complaints related to a lack of "standard operating procedures, directives or protocols" and "substandard care" generally. *Id.*, ¶¶ 20, 61.  Plaintiffs also expressed their disagreement with the

other nurses and doctors at the medical facility regarding the treatment of two particular patients. *Id.*, ¶¶ 31-57.

The only allegation in the FAC regarding protected activity directed to anyone outside of CHSME is that "Plaintiffs . . . contacted the U.S. Department of State Medical Direction, Dr. Mark Cohen to report the substandard care being provided by Defendant at Sather AFB under the State Department contract." *Id.*, ¶ 90.  There is no allegation that Plaintiffs alerted CHSME about their contact with Dr. Cohen or that Plaintiffs raised any billing or claims issues with Dr. Cohen. *See generally* (FAC).  The Plaintiffs, in sum, are trying to make a false claim case out of allegations that CHSME provided "substandard care" to patients in two instances.  If this is permitted, every disagreement over how a contractor performs under a contract would be a "false claim."

## IV.   ARGUMENT

Plaintiffs' FCA claims should be dismissed because this case has nothing to do with the FCA.  The FCA is designed to discourage contractor fraud against the federal government. *Mann v. Heckler & Koch Defense, Inc.,* 630 F.3d 338, 342 (4th Cir. 2010).  Under the FCA, private parties can bring qui tam actions in the name of the United States to enforce the provisions of the statute. 31 U.S.C. § 3730(b); *Glynn v. EDO Corp.*, 710 F.3d 209, 213-14 (4th Cir. 2013).

In 1986, Congress amended the FCA to include an anti-retaliation provision

to protect whistleblowers.  *Id.* (citing False Claims Amendments Act, Pub. L. No. 99–562, 100 Stat. 3153 (1986) (codified as amended at 31 U.S.C. § 3730(h)(1)). The anti-retaliation provision provides as follows:  "Any employee ... discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee ... in furtherance of an action under this section"  31 U.S.C. § 3730(h)(1).  As recently explained by the Fourth Circuit, a successful claim for retaliation under § 3730(h) requires that the plaintiff establish three basic elements: (1) he engaged in "protected activity" by acting in furtherance of a qui tam suit; (2) his employer knew of these acts; and (3) his employer took adverse action against him as a result of these acts. *Glynn*, 710 F.3d at 213-14; *see also Eberhardt v. Integrated Design & Const., Inc.,* 167 F.3d 861, 866 (4th Cir. 1999); *Zahodnick v. IBM Corp.,* 135 F.3d 911, 914 (4th Cir. 1997).

Activities protected include "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section"  *U.S. ex rel Martinez v. Virginia Urology Center, P.C.*, 2010 WL 3023521, 6 (E.D. Va. 2010).  In addition, the Fourth Circuit has found that these requirements may be met where an employee investigates potential wrongdoing and threatens a *qui tam* action. *See Eberhardt,* 167 F.3d at 867–68.  This Court has focused on whether an employee specifically warned an employer of the possibility of a civil action, as opposed to

merely highlighting illegal behavior. *See Mann v. Heckler & Koch Defense, Inc.,* 639 F. Supp. 2d 619, 627 (E.D. Va. 2009) (employee must raise "distinct possibility of litigation"); *see also Yesudian v. Howard Univ.,* 153 F.3d 731, 740–41 (D.C. Cir. 1998) (discussing "distinct possibility" standard and FCA).

### A. Plaintiffs Never Threatened to File an FCA Lawsuit.

Plaintiffs do not allege that they threatened to file a lawsuit, much less an FCA lawsuit, against CHSME, and therefore may not bring an anti-retaliation claim under such statute. *U.S. ex rel Martinez v. Virginia Urology Center, P.C.*, 2010 WL 3023521, 6 (E.D. Va. 2010). In *Martinez,* the plaintiffs' complaint "clearly establish[ed] that she raised concerns about Virginia Urology's compliance with various regulations during the provision of anesthesia and surgical services and the manner in which these services were documented prior to their submission to the billing department. However, at no point does Martinez allege that she filed, or threatened to file, an action under the FCA prior to her termination." Because the plaintiff did not make such a threat, the court found that the facts were "not congruent with the 'distinct possibility of litigation' required to bring the FCA's whistleblower protections into play." *Id.*

Indeed, although the plaintiff alleged throughout her Complaint that her consistent opposition to ostensibly fraudulent billing practices led to her

termination, in this Circuit the protection of § 3730(h) only extends to employees

who are found to be developing *qui tam* claims and who are terminated for that

reason." *Id.* (citing *Eberhardt,* 167 F.3d at 866). Here, Plaintiffs cannot satisfy the

"distinct possibility of litigation" test, and their FCA claim must be dismissed.

### B.  Plaintiffs' Complaints Were Not "In Furtherance Of" the FCA.

Plaintiffs' disagreements with the treatment decisions and protocol at

CHSME's facility have nothing to do with the FCA.  A plaintiffs' complaints must

be "in furtherance of" an FCA claim, or the anti-retaliation provision simply does

not apply.  *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996); *see*

*also Fisch v. New Heights Academy Charter School*, 2012 WL 4049959, 5

(S.D.N.Y. 2012) ("The plaintiff's investigation must be "directed at exposing a

fraud upon the government.").  In *Hopper,* the court refused to find an FCA anti-

retaliation claim under circumstances similar to those present here:

> The entire record fails to demonstrate Hopper was engaged in
> "furtherance of an action" under the FCA. Rather, the record quite
> clearly shows Hopper was merely attempting to get the School
> District to comply with Federal and State regulations. Her numerous
> written complaints, seventy letters and over fifty telephone calls were
> all directed toward this end. She was not trying to recover money for
> the government; she was attempting to get classroom teachers into
> IEP evaluation sessions. She was not investigating fraud. She was not
> whistleblowing as envisioned in the paradigm *qui tam* FCA action.
> *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 742
> (9th Cir.1995) (en banc), cert. denied, 517 U.S. 1233, 116 S.Ct. 1877,
> 135 L.Ed.2d 173 (1996). Quite plainly, the thrust of her complaints

was that the School District was failing to meet its IDEA obligations to its students. Correcting regulatory problems may be a laudable goal, but one not actionable under the FCA in the absence of actual fraudulent conduct.

*Id.*

Moreover, as the Fourth Circuit recently explained, "[w]hile the phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly, it just as surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008). The legislative history of the FCA notes that the employee's protected activity must "be reasonably connected" to the FCA. *McKenzie v. BellSouth Telecomm., Inc.,* 219 F.3d 508, 515-16 (6th Cir. 2000) (citing S.Rep. No. 99-345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300).

An "FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision . . . , [t]o hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract." *Kellogg Brown & Root, Inc.*, 525 F.3d at 378 (citing *Strum v. Exxon Co.,* 15 F.3d 327, 329-30 (4th Cir.1994)); *see also Mann v. Heckler & Koch Defense, Inc.*, 639 F. Supp. 2d 619, 628 (E.D. Va. 2009) ("[E]ven if Plaintiff believed or asserted that Defendant's actions violated the terms of the RFP. . . or federal procurement regulations . . . , allegations pertaining to breaches of contract

or violations of federal regulations are simply not 'protected conduct' as a matter of FCA law.").

What the Plaintiffs complained about was their disagreement with medical decisions CHSi made in connection with contract performance. Mere complaints about a defendant's performance of a contract do not support an FCA claim. *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("Mere dissatisfaction with one's treatment on the job is not ... enough. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations."). Indeed, an employee does not engage in protected conduct if he "merely inform[s] a supervisor of the problem." *Zahodnick v. IBM Corp.,* 135 F.3d 911, 914 (4th Cir.1997).

Plaintiffs make reckless charges against CHSME regarding the treatment of two particular patients. Assuming the accuracy of these baseless allegations, as we must at this stage, they are plainly insufficient under the FCA. The Ninth Circuit provides an analogous application of the "in furtherance of" rule:

> None of the remaining qui tam allegations levied in Cafasso's complaint are cognizable under the FCA. Cafasso's allegations that GDC4S did not comply with ATIRP's disclosure requirements, and that GDC4S received payment from the United States pursuant to ATIRP, in essence fault GDC4S for allegedly breaching its contractual obligations. But "breach of contract claims are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the [FCA]." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 383 (4th Cir.2008). To be sure, Cafasso's complaint alleges unsavory conduct.

> But unsavory conduct is not, without more, actionable under the FCA. Given Cafasso's failure to plead a false claim, we affirm the district court's dismissal of Cafasso's complaint.

*U.S. ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1057-58 (9th Cir. 2011) (selected citations omitted).

After their state law claims were dismissed in Virginia state court, Plaintiffs desperately combed through the CHSME contract with the Department of State for any possible clause or phrase to save their flawed claims. In doing so, the only provision they bring to the Court's attention is as follows: CHSME must "[e]nsure that the HCPs are properly trained and certified prior to arrival in theater and that they stay proficient while providing health care." (FAC, ¶ 14). But prior to their separation from CHSME, Plaintiffs complaints related to a lack of "standard operating procedures, directives or protocols" and "substandard care" generally. *Id.*, ¶¶ 20, 61. This simply has nothing to do with the cited contract provision, much less an FCA claim.

In light of the case law cited above, Plaintiffs' claims do not fall within the classic FCA anti-retaliation case of exposing financial fraud on the government. *See U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 530 (D. Md. 2006) ("Brooks reported what may have been, at most, the non-performance of a contractual duty by his employer. He does not allege the necessary relationship between this non-performance and a false claim or fraudulent

activity."). Here, there is absolutely no nexus between the activity about which Plaintiffs complained and the FCA. *Id.* ("There must be a 'nexus' between the protected actions that the employee takes and exposing fraud or false claims."). Consequently, the FCA claim must be dismissed. *See United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contr. Co.,* 612 F.3d 724, 734 (4th Cir. 2010) ("The FCA is intended to protect the treasury against the claims of unscrupulous contractors, not to penalize employee disagreements over matters of commercial judgment.")

## V.  **CONCLUSION**

Based upon the foregoing, Defendant requests that the Plaintiffs' First Amended Complaint be dismissed.

Respectfully submitted, this 4th day of June, 2013.


_____/S/_____
Carlos M. Recio, Esq.
Virginia Bar No. 24572
1016 7th Street SE
Washington, D.C. 20003
202-293-5690 (office)
202-543-0770 (fax)
crecio@reciolaw.com

Of Counsel:

Michael A. Sexton
Georgia Bar No. 636489
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia  30326
404-876-2700

*Attorneys for Defendant CHS Middle East, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon

counsel for all parties to this proceeding by first class mail and email sent to:

R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900,
Washington, D.C. 20006
([soswald@employmentlawgroup.com](mailto:soswald@employmentlawgroup.com)).

This 4th day of June, 2013.

/s/
Carlos M. Recio, Esq.