IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

RONALD P. YOUNG, *et al.*,          )
                                    )
    Plaintiffs,                   )
                                    )
v.                                  )        Case No. 1:13-cv-000585-GBL-JFA
                                    )
CHS MIDDLE EAST, LLC,               )
                                    )
    Defendant.                    )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant CHS Middle East LLC's ("CHSME") Motion to Dismiss for Failure to State a Claim.  (Doc. 5.)  This case concerns Plaintiffs' claim that CHSME wrongfully terminated their employment in retaliation for engaging in protected activity.  The issue before the Court is whether Plaintiffs state a claim for retaliation under the anti-retaliation provision of the False Claims Act ("FCA") where Plaintiffs allege that after they complained to CHSME management and the Department of State regarding CHSME's lack of written medical protocols, which Plaintiffs allege violated the terms of CHSME's government contract, Defendants terminated their employment in retaliation.

The Court holds that Plaintiffs fails to state an FCA retaliation claim because Plaintiffs' pleadings fail to sufficiently demonstrate engagement in protected activity in furtherance of a qui tam action insofar as their allegations do not sufficiently suggest that the substance of their complaints at the time involved false claims or CHSME's fraudulent conduct in performing its government contract, such that their complaints were attempts to stop an FCA violation. Therefore, the Court grants Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a retaliation claim under the FCA.

## I.   BACKGROUND

On Defendant's Motion to Dismiss for Failure to State a Claim, the Court accepts as true the allegations of Plaintiffs' Amended Complaint. *See, e.g., LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261 (4th Cir. 2012).  Defendant CHSME was contracted by the United States Department of State for $61.5 million to provide medical services at facilities in Iraq.  (Am. Compl. ¶ 13.)  Pursuant to the contract, Defendant was required to "[e]nsure that the [health care providers] are properly trained and certified prior to arrival in theater and that they stay proficient while providing health care."  (*Id.* ¶ 14.)  Plaintiffs Ronald and Ramona Young ("Plaintiffs") were employed by CHSME under one-year employment contracts during July and August 2011, until their termination in January 2012.  (*Id.* ¶¶ 1, 9-10, 15, 73.)  During their employment with CHSME, Plaintiffs were both Medical Surgery Registered Nurses stationed at Sather Air Force Base in Iraq.  (*Id.* ¶¶ 15-21.)

Upon arrival at their stations, Plaintiffs noticed the absence of written procedures and protocols governing the quality of medical care provided by CHSME.  (*Id.* ¶ 19.)  Mr. Young alerted his supervisors about the lack of directives and requested that CHSME provide them; however, CHSME never did.  (*Id.* ¶ 20.)  Similarly, upon Mrs. Young's arrival, she also noticed CHSME's lack of written protocols.  (*Id.* ¶ 23.)  Together, Plaintiffs demanded CHSME respond to their requests for written directives from the facility's nurse manager, Jim Spivey ("Spivey").  (*Id.* ¶ 27.)  Mr. Spivey never provided written protocols, but rather gave verbal "ad hoc instructions" to Plaintiffs.  (*Id.* ¶ 28.)  Plaintiffs also reported complaints to Director Heidi Cox, who responded that Plaintiffs "were being good patient advocates" and requested time to address Plaintiffs' concerns, but Cox never took action.  (*Id.* ¶ 30.)

In the meantime, Plaintiffs observed critical quality control issues concerning CHSME patients. (*Id.* ¶ 31.) Specifically, a patient, identified only as "Patient One," was sedated and intubated without prior consent. (*Id.* ¶ 31.) The CHSME employee who performed the intubation was not qualified to carry out the procedure and was not supervised by an appropriately certified nurse anesthetist. (*Id.* ¶ 35.) Patient One experienced complications during the intubation procedure resulting from the employee's difficulty inserting the tube, causing Patient One to suffer from aspirated fluid in his lungs. (*Id.* ¶ 34.) As a result, Plaintiffs requested that a quality control review panel convene to review the substandard care being provided to Patient One, but Staff Manager Tom Nagel refused. (*Id.* ¶ 39.)

Shortly thereafter, another issue arose in connection with the treatment of a different patient, "Patient Two." (*See id.* ¶¶ 45-47.) The same CHSME practitioner who had treated Patient One was now experiencing problems placing a line in Patient Two, who was unresponsive and being considered for withdrawal of care by the CHSME Ethics Board. (*Id.* ¶¶ 45-46.) However, the nurse practitioner's difficulty with placing the line elicited a pain response from Patient Two. (*Id.* ¶ 47.) Despite such response, however, the practitioner failed to alert the Ethics Board and directed that CHSME nurses withdraw care. (*Id.* ¶¶ 48-55.) As a result, Patient Two nearly died before he was ultimately transferred to another facility for treatment. (*Id.* ¶ 55.)

Subsequently, at Plaintiffs' request, CHSME Director of Public Health and Quality Assurance Paul DeVane ("DeVane"), convened an Ethics Committee to review the quality of care provided to Patient Two. (*Id.* ¶ 56.) The following day, Mr. DeVane informed Plaintiffs that the Committee's "solution to the problem" would be to have Plaintiffs work separate shifts and if they disagreed, they were "free to resign." (*Id.* ¶¶ 56-58.) Prompted by this discussion,

Plaintiffs wrote emails to CHSME executives complaining of the substandard care and contacted Mr. DeVane's supervisor and requested a meeting, but the supervisor never took action. (*Id.* ¶¶ 59, 62-63.) Unsuccessful with their attempts at CHSME, Plaintiffs then contacted the United States Department of State's Medical Director, Dr. Mark Cohen, to report the substandard care provided by CHSME under the controlling government contract. (*Id.* ¶ 61.) Immediately thereafter, Plaintiffs were notified that they had been banned from the medical facilities and were assigned a departure date from Iraq. (*Id.* ¶¶ 64-67.)

Following their return to the United States, Plaintiffs continued to engage CHSME officials seeking understanding of the events that had transpired in Iraq and continued their efforts to alert CHSME of its substandard medical care and their perceived retaliation against them. (*Id.* ¶ 69.) Despite their efforts, Plaintiffs were ultimately terminated. (*Id.* ¶ 73.)

## II.    PROCEDURAL HISTORY

Plaintiffs originally filed their complaint in Virginia state court against CHSME alleging wrongful discharge under Virginia law and retaliation under the Florida Whistleblower Protection Act. (*See* Def.'s Ex. 3, Doc. 1-3.) CHSME removed that action to this Court, arguing that there was diversity of citizenship between the parties. (*See* Jan. 18, 2013 Order, *Young v. CHS Middle East*, 1:12-cv-1202, Doc. 31.) Upon Plaintiffs' motion to remand, the Court permitted the parties to engage in a brief period of discovery concerning CHSME's principal place of business. (*Id.*) Discovery revealed that CHSME's "nerve center" for diversity purposes was located in Virginia, destroying complete diversity, and thereby depriving the Court of subject matter jurisdiction. (*Id.*) Accordingly, the Court remanded the matter to Virginia. (*Id.*) On remand, the Virginia state court dismissed Plaintiffs' state law claims. (Def.'s Br. at 2.)

4

Plaintiffs then filed an Amended Complaint in Virginia state court alleging retaliation under the False Claims Act. (*Id.* at 2; Ex. 3, Doc. 1-3.) CHSME subsequently removed the action to this Court on the basis of federal question jurisdiction. (*See* Doc. 1.) The Amended Complaint alleges that Plaintiffs engaged in protected activity on numerous occasions when they expressed concerns, both to Defendant and the government, that the quality of care Defendant delivered did not adequately "meet the quality and standard of medical services [and care that] the Department of State was paying for" under the contract. (Am. Compl. ¶ 80.) On June 4, 2013, CHSME moved to dismiss Plaintiffs' claims. (*See* Doc. 5.) CHSME's Motion to Dismiss for Failure to State a Claim is currently before the Court. (*Id.*)

## III.   STANDARD OF REVIEW

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a [facially] plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Rule 8 requires a complaint to be "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed under Rule 12(b)(6) if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Layman v. MET Labs., Inc.*, 2012 WL 4018033, at *4 (D. Md. Sept. 12, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *LeSueur-Richmond Slate*

*Corp.*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The Court attaches no such assumption to those "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citations omitted).   Nor is the court obligated to assume the veracity of the legal conclusions drawn from the facts alleged.   *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (citing *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979)).   Thus, the Court's review involves the separation of factual allegations from legal conclusions. *Burnette v. Fahey*, 698 F.3d 171, 180 (4th Cir. 2012); *see U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) ("[W]e will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'") (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol*, 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).   The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).   The complaint must present "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).   Thus, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the

defendant's liability for the unlawful act or omission alleged. *See Francis v. Giacomelli*, 588

F.3d 186, 196-97 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678-79 and *Gooden v. Howard Cnty.,*

*Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)).

 Distinguished from fraud-based FCA claims, actions brought pursuant to the FCA's anti-

retaliation provision are not subject to the heightened pleading standards of Rule 9. *See U.S. ex*

*rel. Elms v. Accenture LLP*, 341 F. App'x 869, 873 (4th Cir. 2009); *Sharma v. District of*

*Columbia*, 881 F. Supp. 2d 138, 142 n.3 (D.D.C. 2012).  Thus, courts assessing FCA retaliation

claims apply Rule 8's notice pleading requirements under the *Twombly/Iqbal* standards on a

motion to dismiss. *Elms*, 341 F. App'x at 873.  Courts have recognized that, although a plaintiff

may fail to plead a false claim with the requisite particularity to support the underlying FCA

action, claims predicated on failed FCA claims can nonetheless support a retaliation claim under

the lower pleading standard applied to retaliation claims. *Elms*, 341 F. App'x at 873.  Critical to

any FCA-based claim, however, is the underlying fraud. *Layman*, 2012 WL 4018033, at *5.  At

a minimum, FCA retaliation claims must comprehend some allegation of fraudulent or deceptive

conduct in the context of a government contract. *Id.*

## IV.   DISCUSSION

 The Court grants Defendant's Motion to Dismiss because Plaintiffs' factual allegations,

taken as true, are insufficient to state a retaliation claim under the False Claims Act.  The Court

reaches this conclusion because Plaintiffs fail to plead sufficient facts that plausibly suggest that

they took acts in furtherance of a *qui tam* suit insofar as Plaintiffs neglect to plead the requisite

allegation that their reports were directed at CHSME's fraudulent conduct.

 The False Claims Act, which was first enacted during the Civil War, is designed to

discourage fraud against the federal government by imposing liability on "any person who . . .

knowingly presents, or causes to be presented, a false or fraudulent *claim* for payment or approval . . . ." 31 U.S.C. § 3729(a)(1)(A) (emphasis added); *see Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 342 (4th Cir. 2010) ("The FCA is a statutory scheme designed to discourage fraud against the federal government."). The FCA defines "claim" broadly to include "any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the United States . . . ." 31 U.S.C. § 3729(c).

"[L]iability under the FCA turns on whether '(1) there was a false statement or fraudulent course of action; (2) . . . carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or forfeit moneys due.'" *U.S. ex rel. Martinez v. Va. Urology Ctr., P.C.*, 2010 WL 3023521, at *4 (E.D. Va. 2010) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999)). "[T]o trigger liability under the Act, a claim actually must have been submitted to the federal government for reimbursement, resulting in 'a call upon the government fisc.'" *Takeda*, 707 F.3d at 454 (quoting *Harrison*, 176 F.3d at 785). Accordingly, the presentment of a false claim is "the central question" in creating FCA liability. *Harrison*, 176 F.3d at 785; *cf. U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a claim is not . . . a 'ministerial act,' but the *sine qua non* of a False Claims Act violation.").

There are two mechanisms of FCA enforcement. *Mann*, 630 F.3d, 343. "First, the Attorney General can bring a civil action to remedy violations of § 3729." *Id.* (citing 31 U.S.C. § 3730(a)). In the alternative, the FCA's qui tam provision provides a second enforcement mechanism. *Id.* (citing 31 U.S.C. § 3730(b); *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 412, (2005)). Under the qui tam provision, private parties have standing to "bring qui tam actions in the name of the United States to enforce" FCA

8

provisions. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing 31 U.S.C. § 3730(b)); *see also U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 387 (4th Cir. 2012).

To enhance protections for whistleblowers and other parties involved in qui tam actions, Congress amended the FCA in 1986 to incorporate 31 U.S.C. § 3730(h), an anti-retaliation provision intended to "prevent[] the harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions." *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997). The addition of § 3730 reflects Congress's effort to encourage disclosure of possible fraudulent activities and "to promote enforcement of the FCA by 'assur[ing] those who may be considering exposing fraud . . . are legally protected from retaliatory acts.'" *Mann*, 630 F.3d at 343 (quoting S. Rep. No. 99–345, at 34, 1986 U.S.C.C.A.N. 5266, 5299 (1986)). Pursuant to the FCA anti-retaliation provision:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop [one] or more violations of [the False Claims Act].

31 U.S.C. § 3730(h)(1).

Plaintiffs must establish three elements in order to succeed in a § 3730 retaliation case: (1) that the employee "engaged in 'protected activity' by acting in furtherance of a qui tam suit;" (2) that the employer had knowledge of these actions; and (3) that the "employer took adverse action against him as a result of these acts." *Glynn*, 710 F.3d at 214 (quoting *Zahodnick*, 35 F.3d at 914). To satisfy the first element, "[a]n employee need not file an actual qui tam suit . . . ." *Glynn*, 710 F.3d at 214 (citing *Mann*, 630 F.3d at 343). Examples of protected activity that satisfy the first prong can include "investigation for, initiation of, testimony for, or assistance in

an action filed or to be filed under [the FCA]." *Martinez*, 2010 WL 3023521, at *6. "Because the statute protects acts 'in furtherance' of a qui tam suit, actionable retaliation can occur when employees are investigating or 'collecting information about a possible fraud, before they have put all the pieces of the puzzle together.'" *Id.* (quoting *Mann*, 630 F.3d at 343-44); *see also Eberhardt*, 167 F.3d at 867 (explaining that an employee investigating or collecting materials in relation to an investigation of potential wrongdoing when such investigation "reasonably could [lead] to the filing of a qui tam action" is also considered an activity protected under the FCA).

Prior to the FCA amendments instituted in 2009, known as the FERA amendments, the Court applied the "distinct possibility of litigation" test to determine whether an employee had engaged in a protected activity. Congress's implementation of the FERA amendments substantively broadened the scope of activities that constitute protected activity under the FCA. The FERA amendments expand the definition of protected activity to include not only acts in furtherance of an FCA claim but also "efforts to stop" a violation. Under this objective standard, "protected activity occurs when an employee's opposition to fraud[ulent conduct] takes place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when litigation is a reasonable possibility.'" *Mann*, 630 F.3d at 344 (quoting *Eberhardt*, 167 F.3d at 869). Stated differently, "this standard requires that protected activity relate[] to company conduct that involves an objectively reasonable possibility of an FCA action." *Id.* Most importantly for purposes of the Court's inquiry, "[t]he employee's investigation must concern 'false or fraudulent claims' or it is not protected activity under the FCA." *Glynn*, 710 F.3d at 214 (quoting *Eberhardt*, 167 F.3d at 868).

10

The Court dismisses Plaintiffs' Amended Complaint because Plaintiffs do not sufficiently allege that their reported discontents with CHSME related to CHSME engaging in fraudulent conduct.  Plaintiffs allege circumstances related only to the substandard quality of care CHSME provided, which led Plaintiffs to believe CHSME was paid by the government for defective services.  (Am. Compl. ¶¶ 1, 26.)  Specifically, Plaintiffs plead that they "witnessed and reported conditions that they reasonably believed prevented [CHSME] from meeting its obligation to the government and that [CHSME] was therefore presenting false claims for its contracted services." (*Id.* ¶ 1.)  Plaintiffs subsequent allegations, however, concern only their demands for quality standards and petitions for CHSME to draft and provide them with written standards of care, the lack of which they believed contravened CHSME's obligations under its contract.  (*Id.* ¶¶ 26, 27, 43.)  Plaintiffs also allege that they contacted CHS management as well as the Department of State to alert them of and object to the substandard care CHSME provided and the absence of standard operating procedures, directives, or protocols to govern the provision of medical services. (*Id.* ¶¶ 19, 29-30, 44.)

Notably, however, Plaintiffs do not plead sufficient facts to plausibly suggest that their reporting activities were actions in furtherance of a viable FCA claim because they do not purport to involve any fraud.   Plaintiffs artfully nest allegations between the numerous paragraphs concerning their reports to CHSME and the Department of State, but in each allegation concerning reporting, Plaintiffs do not allege a report concerning the government contract in the context of a false claim.  "[T]here must be some suggestion of impropriety or illegality by the employer that the employee is attempting to uncover." *Dillon v. SAIC, Inc.*, 2013 WL 324062, at *5 (E.D. Va. Jan. 28, 2013).  The Amended Complaint is entirely devoid of any facts that could liberally be construed as a report concerning impropriety or illegality, let

11

alone a false or fraudulent claim. *Cf. Layman*, 2013 WL 2237689, at *8 (holding that an employee sufficiently alleged protected activity when he informed his supervisors that fraudulent calculations used to certify contract compliance amount to fraud on the government); *Brazil v. Cal. Northstate Coll. of Pharmacy*, 904 F. Supp. 2d 1047, 1055 (E.D. Cal. 2012) (finding allegations that an employee reported to his employer that it was committing fraud that could result in civil and criminal sanctions); *U.S ex rel. Moore v. Cmty. Health Servs.*, No. 3:09cv1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (holding that an employee's complaint regarding fraudulent billing practices were sufficient to state a retaliation claim under the FCA); *U.S. ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 606-07 (S.D. Tex. 2012) (finding sufficient an employee's questioning of whether employer's off-label uses were legal or amounted to fraud on the government).

        Moreover, Plaintiffs' allegations fail to plausibly suggest that, at time of their complaints, they intended or even contemplated reporting *fraudulent conduct* when voicing their concerns about the quality of medical services being provided. Merely raising concerns regarding possible non-compliance with a contract, as Plaintiffs do, without more, cannot form the basis of protected activity cognizable under the FCA's anti-retaliation provision. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (quoting *Wilson*, 525 F.3d at 383) ("'[B]reach of contract claims are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the FCA.'"). Not every breach of a government contract constitutes an FCA violation. *Manfield*, 851 F. Supp. 2d at 202; *cf. U.S. ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 372 (5th Cir. Mar. 17, 2011) (requiring the substance of internal reports consist of concerns of defrauding the government and not merely general misconduct). In order for Plaintiffs' internal reports and reports to the government to

constitute protected conduct, Plaintiffs "must [have] specifically allege[d] fraudulent claims for federal funds and not merely address concerns about general misconduct." *Layman v. MET Labs., Inc.*, No. Civ. A. RDB-12-2860, 2013 WL 2237689, at *6 (D. Md. May 20, 2013) (quoting *Guerrero v. Total Renal Care, Inc.*, 2012 WL 899228, at *5 (W.D. Tex. Mar. 12, 2012)). The most fundamental feature of a protected activity is that an employee opposes a specific *fraud* committed by defendant rather than merely complaining of a defendant's "unsavory conduct" or even a breach of a contractual obligation. *Cafasso*, 637 F.3d at 1058. Thus, because Plaintiffs' alleged complaints to CHSME and the Department of State about the lack of written medical protocols and the quality of medical services did not concern fraudulent conduct or false claims for payment, Plaintiffs' complaints, as currently pled, were not plausibly made in furtherance of a pending or even viable FCA qui tam action.

Admittedly, Plaintiffs' strongest allegations include their opening allegation that they "reasonably believed" that the lack of written medical protocols prevented CHSME from meeting its contractual obligation and was therefore presenting false claims to the United States. Though this single allegation suggests that Plaintiffs "reasonably believed" that CHSME submitted false claims, this bare allegation is insufficient standing alone insofar as it is incongruent with the remaining substantive allegations of Plaintiffs' Amended Complaint. Specifically, the bulk of Plaintiffs' Amended Complaint comprises allegations concerning only their efforts to improve CHSME's quality of service and their actions "to report the substandard care being provided by [CHSME] at Sather AFB *under the State Department contract*." However, these allegations are similarly deficient because they do not plausibly suggest that Plaintiffs informed, or even sought to inform, CHSME or the Department of State of illegal or fraudulent activity. Again, "[t]here must be some alleged fraud or illegal activity involved in

13

order to rise to the level of protected activity." *Dillon*, 2013 WL 324062, at *5; *Layman*, 2012 WL 4018033, at *4.  Though it may be inferred that Plaintiffs' contact with the Department of State could have "perked the government's ears," there was no protectable basis to do so because Plaintiffs' reports, at best, related to contractual breaches, not fraud.  *Glynn*, 710 F.3d at 218. Plaintiffs' allegations, therefore, are nothing more than "expressions of concern or suggestion," not directed to a fraudulent act likely to lead to a viable FCA claim.  *Id.* at 216.

The Court rejects Plaintiffs' argument that the FERA amendments to the FCA, which broadened the definition of protected activity, save their claims because their conduct constitutes an "effort to stop" an FCA violation under the post-FERA language.  While it is true that the FERA amendments were intended to be more inclusive of the types of conduct protected, FERA did not obviate the nexus of protected activity to fraudulent conduct.  Indeed, post-FERA cases still require a sufficient connection with the substance of the alleged whistleblowing to a defendant's fraudulent conduct.  *See Manfield*, 851 F. Supp. 2d at 203 (requiring allegations of "circumstances that support a potential fraud" under the new statute); *Sharma*, 881 F. Supp. 2d at 142 (requiring allegations of a violation of the FCA under the new language).  Claims under the False Claims Act, whether for fraud or whistleblower retaliation, still require the element of a "false claim."  The whistleblowing activity "must concern 'false or fraudulent claims,' or it does not fall under the False Claims Act."  *Eberhardt v. Integrated Design & Constr.*, 167 F.3d 861, 868 (4th Cir. 1999); *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998). To hold otherwise would require the Court to read "false claims" out of the statute, a result inconsistent with Congress's intent in enacting the FERA and the purpose and objective of the FCA.

Additionally, Plaintiff's reliance on *Manfield* for the proposition that internal reporting of a breach of government contract itself suffices as an effort to stop an FCA violation is misplaced, as Plaintiffs' representation of the case fails to fully account for the facts of *Manfield*. (*See* Pls.' Mem. Opp'n Mot. Dismiss at 11.) The court in *Manfield* found the plaintiff's allegations of internal reporting sufficient to survive a motion to dismiss after finding that the plaintiff actually confronted the defendant regarding violations of the defendant's *contract* under circumstances suggestive of fraud. *Id.* at 203. Manfield specifically confronted the defendant about the breach *in context of the government contract*, such that an inference of an FCA violation would have been apparent to the employer. No such facts were pled in this case. As stated previously, the nexus between Plaintiffs' complaints of a lack of protocols and CHSME's fraudulent conduct or billing practices has not been sufficiently pled. Even Plaintiffs' bare allegation that they contacted the Department of State regarding substandard care provided under the contract is not directly analogous to *Manfield* in which the plaintiff reported express *violations* of the underlying government contract to his employer. A complaint for the purpose of improving the level of care does not amount to the suggestion of fraud. *Yesudian*, 153 F.3d at 743 ("Merely grumbling to the employer about . . . regulatory violations does not satisfy the requirement—just as it does not constitute protected activity in the first place."); *cf. Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) ("An employee is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation."). Therefore, the facts of this case distinguish *Manfield*'s holding.

Similarly, in *U.S. ex rel. Hood v. Satory Global, Inc.*, 2013 WL 2274798 (D.D.C. May 23, 2013), the court found facts sufficient to survive a motion to dismiss when the plaintiffs questioned his employer about the *propriety* of using government resources for private gain.

Notably, the plaintiffs in *Hood* alleged that the defendant's billing practices included questioning the defendant about whether conducting private corporate business using government resources was appropriate. *Id.* at *3. Additionally, the *Hood* plaintiffs specifically contacted management for the purpose of making them aware of the impropriety of defendant's actions. The court there found the allegations more than merely concerns or grievances but protected activity regarding information related to possible fraud. *Id.* at *15. In stark contrast, Plaintiffs here fail to plead facts that plausibly support the conclusion that their reports were suggestive of CHSME's impropriety, such that an inference of reporting fraud could be drawn in their favor. Merely expressing concerns regarding patient care, without a tether to CHSME's allegedly fraudulent conduct, falls short of what is required to successfully assert an FCA retaliation claim. *Layman*, 2012 WL 4018033, at *4. Though Plaintiffs are not required to plead fraud with particularity, they must still "allege circumstances that support a potential fraud." *Manfield*, 851 F. Supp. at 203. Plaintiffs fail to do so.

## IV.   CONCLUSION

For the foregoing reasons, the Court holds that Plaintiffs' Complaint fails to sufficiently allege an FCA retaliation claim because Plaintiffs fail to sufficiently plead engagement in protected activity insofar as their allegations do not suggest that the substance of their complaints were related to CHSME's fraudulent conduct. Therefore, Plaintiffs' Amended Complaint fails to state a claim for FCA retaliation and the Court grants Defendant's Motion to Dismiss. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 5) is **GRANTED**;

16

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint is **DISMISSED without prejudice**.   Plaintiffs are granted leave to amend their Amended Complaint within twenty-one (21) days from the date of entry of this Order.   Therefore, a Rule 58 Final Judgment will not issue.

**IT IS SO ORDERED.**

ENTERED this _____ day of August, 2013.

Alexandria, Virginia
8/    /2013

/s/
Gerald Bruce Lee
United States District Judge